FILED

2013 Feb-27  PM 03:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DAVID PRINCE, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:12-CV-751-LSC |
| | ] | |
| | ] | |
| CAROLYN W. COLVIN, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.      Introduction

Plaintiff, David Prince, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB").  Mr. Prince timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Prince was fifty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he completed a college degree. (Tr. at 15-31, 196, 207.)  Plaintiff's past work experiences include employment as a videographer,

videotape editor, and delivery driver. (Tr. at 144.)  Mr. Prince claims that he became disabled on August 12, 2007, due to sciatica, a hernia, nerve damage, and generalized anxiety disorder.  (Tr. at 201.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  (*Id.*)  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  (*Id.*)  The decision depends on the medical evidence in the record.  See *Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  (*Id.*)  If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  (*Id.*)  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. (*Id.*)  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do  other work, the claimant is not disabled.  (*Id.*)

Applying the sequential evaluation process, the ALJ found that Mr. Prince met "the insured status requirements of the Social Security Act through March 31, 2014." (Tr. at 20.)  He further determined that Mr. Prince has not engaged in substantial gainful activity since the alleged onset of his disability.  (*Id.*)  According to the ALJ,

Plaintiff's "degenerative disc disease of the lumbar spine, hemochromatosis, and anxiety" are considered "severe" based on the requirements set forth in the regulations. (*Id*.) However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 21.)  Thus, the ALJ proceeded to the next step of the evaluation and determined that Mr. Prince has the RFC to perform light work with the following additional restrictions: he can lift and carry 10 pounds frequently and 20 pounds occasionally; he can stand 2 of 8 hours, walk 2 of 8 hours, and sit 6 of 8 hours; he can frequently push and pull with the lower extremities; he can occasionally climb, balance, stoop, kneel, crouch, and crawl; he can never climb ladders, ropes or scaffolds; he can never be exposed to hazards; he can perform simple 1-2 step tasks; and he requires a low stress environment defined as occasional contact with the public.  (Tr. at 22.)

The ALJ determined that the plaintiff is unable to perform any of his past relevant work. (Tr. at 26.)  The ALJ noted that Plaintiff was a "younger individual aged 18-49" on the alleged disability onset date, he has at least a high school education, and he is able to communicate in English, as those terms are defined by the regulations.  (Tr. at 26-27.)  He determined that transferability of job skills is not

material to the determination of disability. (Tr. at 27.) The ALJ then determined that considering Plaintiff's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that he can perform, such as bench assembler, inspector, and labeler. (*Id.*) Accordingly, the ALJ found that Plaintiff had "not been under a disability, as defined in the Social Security Act, from August 12, 2007, through the date of this decision." (Tr. at 28.)

II.     Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Id.*) "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Plaintiff claims that the ALJ's decision should be reversed and remanded for three reasons.  First, he argues that the ALJ's finding that his impairments did not meet Listing 1.02 is not supported by substantial evidence.  Second, he contends that the ALJ's determination that he could perform light work is not supported by substantial evidence.  Third, he argues that the ALJ's decision is inconsistent with the testimony of the vocational expert ("VE").

A.   The ALJ's Determination that Plaintiff's Impairments Do Not Meet Listing 1.02

Plaintiff first argues that the ALJ erred in finding at step three of the sequential evaluation that his impairments did not meet or equal Listing 1.02, which addresses major dysfunction of a joint, because, in Plaintiff's view, the ALJ ignored evidence indicating that Plaintiff had to use a cane to walk.  A claimant may meet his burden of proving disability if he shows that his impairments meet or equal a listed impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iii).  To "meet" a listing, a claimant must have a diagnosis included in the listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings and the durational requirement. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  To "equal" a listing, the medical findings must be "at least equal in severity and duration to the listed findings."  *Id.*  A claimant's impairments must meet or equal *all* of the specified medical criteria in a particular listing for the claimant to be found disabled at step three of the sequential evaluation.  *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990). The evidentiary standards for presumptive disability under the listings are stricter than for cases that proceed to other steps in the sequential evaluation process because medical findings carry the entire burden of proving disability, and vocational factors such as age, education, or work experience are not considered. *See* 20 C.F.R. §

404.1520(d); *Zebley*, 493 U.S. at 532. The greater level of evidentiary proof is a

reasonable rule given that the listings represent an automatic screening rather than an

individual judgment based on all relevant factors in a claimant's claim. *See Zebley*, 493

U.S. at 532.

> The listing at issue in this case is 1.02, which states in relevant part:

>> Major dysfunction of a joint(s) (due to any cause):

>> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

>>> A.   Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.  Section 1.00B2b defines "inability to

ambulate effectively" as "an extreme limitation of the ability to walk . . . that

interferes very seriously with the individual's ability to independently initiate, sustain,

or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1). Ineffective

ambulation generally means having insufficient lower extremity functioning to permit

independent ambulation without the use of a hand-held assistive device that limits the

functioning of both upper extremities.  *Id.*  The regulations further provide that:

> [t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id.*

In this case, the ALJ stated that "the requirements of this listing are not satisfied, as the record fails to establish that the claimant has an inability to ambulate effectively as that phrase is defined in section 1.00 of the listing." (Tr. at 21.)  The ALJ continued, "The claimant testified that he uses a cane, but Manh Dane, MD notes that he has no difficulty with gait or station, and normal range of motion . . . [l]ikewise, John Roberts, MD of Center for Pain Management notes he has a steady and normal gait . . . [t]reatment in 2011 shows negative musculoskeletal problems . . ."  (*Id.*)  The ALJ also noted that no doctor ever indicated that a cane or other ambulatory device is necessary.  (Tr. at 24.)

Despite Plaintiff's assertions, the ALJ's finding that Plaintiff could ambulate effectively, such that he did not meet Listing 1.02, is supported by substantial evidence.  Plaintiff testified that he began using a cane in 2007 and that he can only walk with a cane 100 yards before he has to stop and take a break because of pain, and that he can only be on his feet an average of 30 minutes before pain forces him off of his feet. (Tr. at 121, 126.)  He also testified that he could only lift 10 to 15 pounds and that he can only lift with one arm because he is always using his cane. (Tr. at 134-35.) Aside from his testimony, the record also shows that in December 2007, Plaintiff told Dr. Roark, a physician at North Alabama Medical Care, that he had recently begun using a cane because it made him "feel sure footed," that he uses it so that he doesn't "thump his foot down" and to "buffer his leg so that he doesn't inadvertently bump into any furniture." (Tr. at 285, 289.)  He also reported to Dr. Anthony Pitts in December 2009 that he started using a cane "occasionally" approximately two years prior. (Tr. at 411.)  Treatment notes from May 20, 2008, to August 23, 2011, by Dr. Roberts at Tennessee Valley Pain Consultants, consistently note that Plaintiff was using a cane. (Tr. at 436-451, 460-65.)

Plaintiff argues that the aforementioned evidence supports a finding that he cannot ambulate effectively and thus entitles him to a presumption of disability.

However, the ALJ was not required to accept as true Plaintiff's testimony as to his use of a cane because the medical evidence of record contradicted it. *See* 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.") As the ALJ noted, the record contains no indication that Plaintiff was ever *prescribed* a hand-held assistive device or that its use limited the functioning of *both* of Plaintiff's arms. *See* SSR 96-9p, 61 Fed. Reg. 34478, 34482 (1996) ("[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ."); *see also, e.g.*, *Bullock v. Astrue*, 2007 WL 4180549 (5th Cir. Nov. 27, 2007) (holding substantial evidence supported denying benefits to claimant who could walk with use of single cane). To the contrary, and as the ALJ noted, two of Plaintiff's treating physicians, Dr. Manh Dang and Dr. John Roberts, remarked on several occasions that Plaintiff was capable of walking normally without mention of an assistive device. (Tr. 294-96, 319-23, 333-35, 345, 385-390, 394, 466-68.) The ALJ also listed several

reasons for discounting Plaintiff's overall credibility, including the fact that Plaintiff collected unemployment insurance funds during the period he claimed disability, which the ALJ found is inconsistent with an inability to work. (Tr. at 24, 117.) The ALJ also noted that Plaintiff alleges he stopped work due to disabling limitations, but he reported to Dr. Roark that he stopped working because of micro-management issues with his boss. (Tr. at 24, 284.)

The medical evidence of record, including opinions by treating physicians, does not show that Plaintiff was "extremely limited in his ability to walk . . ." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1). As such, Plaintiff failed to show that his use of an unprescribed cane entitled him to a presumption of disability because his impairments met the criteria of Listing 1.02.

B.   The ALJ's Finding that Plaintiff was Capable of a Limited Range of Light Work

Plaintiff next argues the ALJ should have found him disabled under Grid Rule 201.14 because the ALJ found he could not perform a full range of light work. (Doc. 8 at 11-13.) The grid rules are a series of tables that constitute administrative notice of the numbers of unskilled jobs that exist throughout the national economy. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b). If a claimant's combination of age, education, work experience, and RFC match one of the grid rules, the rule will direct

a conclusion as to whether work exists that the claimant could perform. *See id.* However," [w]here any one of [these] findings of fact does not coincide with the corresponding criterion of a [grid rule], the [grid rule] does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a).

Here, the grids did not direct a conclusion regarding Plaintiff's alleged disability because his RFC did not match the requirements of a full range of light work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). The ALJ found that Plaintiff could perform a reduced range of light work with other exertional and nonexertional limitations, including no more than 2 hours of standing and 2 hours of walking. (Tr. at 22.) Importantly, however, although Plaintiff could not perform the full range of light work, he had the ability to perform activities in excess of sedentary work. (*Id.*) *See* 20 C.F.R. § 404.1567(a), (b) (defining sedentary and light work); SSR 83-10 (further defining sedentary and light work). Specifically, as found by the ALJ, Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, which is greater than the minimal lifting and carrying requirements of sedentary work. (Tr. at 22.) *See* 20 C.F.R. § 404.1567(b) (stating light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"); 20

C.F.R. § 404.1567(a) (stating sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools"). Plaintiff also could stand and walk for up to 4 hours in an 8 hour workday, which exceeds the occasional standing and walking required by sedentary work. (Tr. at 22.) *See* SSR 83-10 (stating standing or walking in sedentary work "should generally total no more than about 2 hours of an 8-hour workday"). The ALJ also noted Plaintiff could frequently push and pull with his lower extremities, which would place Plaintiff's exertional ability in the light work category. (Tr. at 22.) *See* 20 C.F.R. § 404.1567(b) (noting a job is considered light work "when it involves sitting most of the time with some pushing and pulling of arm or leg controls"); SSR 83-10 (noting light work may involve "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which requires greater exertion than in sedentary work"). In sum, Plaintiff's exertional capacity fell between light work and sedentary work. The ALJ thus recognized Plaintiff had limitations that precluded the strict application of the grids and he could use the grids only as a framework for his decision. (Tr. at 22.) *See* 20 C.F.R. §§ 404.1569, 404.1569a(d); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2); *Smith v. Astrue*, 2011 WL 2650588, at *5 (M.D. Ala. July 6, 2011) (rejecting claimant's argument that a finding she functioned at the

sedentary level would be more appropriate because the claimant's RFC, although less than the full range of light work, exceeded sedentary level); *Brown v. Astrue*, 2010 WL 1257479, at *3-4 (M.D. Fla. Mar. 29, 2010) (same).

Plaintiff argues his standing and walking limitations precluded a full range of light work and the ALJ was required to apply Grid Rule 201.14 in the sedentary grid table to find him disabled. (Doc. 8 at 11-13.) As discussed above, however, Plaintiff had the ability to perform more than the minimal requirements of sedentary work. Plaintiff's exertional limitations were "somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work . . ." SSR 83-12. In such situations, the appropriate course of action is to obtain assistance from a vocational expert ("VE") to determine the remaining occupational base, which is exactly what the ALJ did in Plaintiff's case. (Tr. at 27, 144-46.) *See id.; Phillips v. Barnhart*, 357 F.3d 1232, 1242-44 (11th Cir. 2004); *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996). As such, the Court finds that substantial evidence supports the ALJ's decision not to find Plaintiff disabled pursuant to Grid Rule 201.14.

C.   The ALJ's Treatment of Dr. Estock's Opinion and the Hypothetical Question to the VE

Plaintiff's final argument is twofold. He first contends that the ALJ did not properly account for the opinion of the state agency psychological consultant, Robert

Estock, M.D., who found, among other things, that Plaintiff "would likely miss 1-2 days/month due to psych symptoms" on a Mental Residual Functioning Capacity Assessment form. (Tr. at 434.) Plaintiff also argues that the ALJ erred in ignoring the VE's testimony at his hearing that "if [Plaintiff] were to miss on average more than 1 day of work a month he would be unable to maintain gainful employment." (Doc. 8 at 15.)

As Plaintiff correctly points out, the ALJ gave "significant" weight to Dr. Estock's opinion as it was consistent with the record as a whole. (Tr. at 25.) However, the ALJ did not indicate he was granting controlling weight to or adopting wholesale Dr. Estock's opinion. (Tr. at 25.) Instead, the ALJ stated that he was giving significant weight to Dr. Estock's opinion, and then later in his decision he further clarified the portions of the opinion that he was adopting. (Tr. at 25-26.) Specifically, the ALJ noted that Dr. Estock's assessments "support [his] finding that [Plaintiff] can perform mental work activities within the above [RFC]." (Tr. at 26.) The ALJ specifically noted that Dr. Estock reported on a Mental Residual Functioning Capacity Assessment form that Plaintiff has mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and no episodes of decompensation;

that Plaintiff would be expected to understand, remember, and carry out short simple instructions and tasks; and that Plaintiff has never been hospitalized or sought treatment for anxiety and does not have problems getting along with family, friends, neighbors or others.  (Tr. at 26, 418-31.)

The ALJ did *not* state that he was adopting the portion of Dr. Estock's opinion on the form that Plaintiff would likely miss 1 to 2 days of work per month due to psychological symptoms, and as Plaintiff concedes, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as . . . the ALJ's conclusion as a whole [is] supported by substantial evidence."  (Doc. 7 at 15, quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).  Indeed, as the fact-finder, the ALJ was entitled to weigh the evidence and ultimately reject portions of Dr. Estock's opinions as inconsistent with other evidence of record.  *See* 20 C.F.R. § 416.929(c)(4); *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (holding that an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion") (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).  Further, the Court is not required to treat any portion of Dr. Estock's opinion with deference because he was a state-agency  consultant and not one of Plaintiff's treating physicians.  *See* 20 C.F.R. § 404.1527(d)(i) (explaining the

general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources); *Crawford v. Comm'r*, 363 F.3d 1155, 1160 (11th Cir. 2004). Even if the Court was required to treat this opinion with deference, it is inconsistent with the other medical evidence of record because there is no other indication that Plaintiff would need to miss 1 to 2 days of work per month due to psychological symptoms. To the contrary, Plaintiff has never been hospitalized for a mental impairment. Rena Brantner, a registered nurse to whom Plaintiff visited for counseling sessions, gave him a GAF score of 51, which indicates the presence of only moderate psychological symptoms.[1] (Tr. at 307.) Plaintiff's treating physician Dr. Dang reported him as being alert, and Dr. Roberts reported him as being alert and oriented. (Tr. at 293-301, 377-97.) Thus, to the extent Plaintiff points to other evidence which he argues would undermine the ALJ's mental RFC determination, his contentions misinterpret the narrowly circumscribed nature of this Court's review of

---

[1] The GAF Scale (Axis V of the Multiaxial Assessment) "is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact, and in predicting outcome . . . the GAF scale is divided into 10 ranges of functioning. Making a GAF rating involves picking a single value that best reflects the individual's overall level of functioning . . . In most instances, ratings on the GAF Scale should be for the current period . . ." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-3 (4th ed. Text revision, 2000) (DSM-IV-TR). GAF scores between 51 and 60 reflect moderate symptoms, including moderate difficulty in social, occupational, or school settings. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.2000).

the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239 ("[The Court] may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary. Even if [the Court] find[s] that the evidence preponderates against the Secretary's decision, [it] must affirm if the decision is supported by substantial evidence.") (citing 42 U.S.C. § 405(g))). Here, substantial evidence supports the ALJ's RFC finding, including his decision to give significant weight to the opinion of Dr. Estock and further adopt the portions of Dr. Estock's opinions as stated in the decision. (Tr. at 27-28.)

Plaintiff also argues that the ALJ erred in ignoring the VE's testimony that "if [Plaintiff] were to miss on average more than 1 day of work a month he would be unable to maintain gainful employment." (Doc. 8 at 15.) As an initial matter, Plaintiff misstates the VE's testimony. The VE testified on direct examination that, given the ALJ's hypothetical question, unskilled light duty jobs did exist. (Tr. at 145-46.) Then, when questioned by Plaintiff's counsel about Dr. Estock's opinion that Plaintiff would likely miss 1 to 2 days per month due to psychological problems, the VE actually testified that, in an unskilled job, "the research shows that probably one, maybe two days a month at the most would be all that would be tolerated." (Tr. at 146.) When Plaintiff's counsel asked whether the VE meant that a worker would be

permitted to miss 24 days per year, the VE responded, "one day is more compatible with what is allowed or tolerated." (*Id.*)   Thus, the VE's testimony was not inconsistent with Dr. Estock's opinion that Plaintiff would likely miss 1 to 2 days of work per month.  (Tr. at 146, 434.)

Moreover, the Eleventh Circuit has held that the Commissioner can disregard responses to hypotheticals that are not supported by the record.  *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986).  As the ALJ did not state that he was relying on Dr. Estock's opinion that Plaintiff would likely miss 1 to 2 days per month, there was no need for the ALJ to reconcile the VE's testimony that one missed day of work per month would probably be all that would be tolerated with his ultimate finding that there existed jobs in the national economy that Plaintiff could perform.

IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Prince's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 27th day of February 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

[160704]